Timothy A. Chandler  State Bar No: 70426
theprivatedefender@gmail.com
Law Offices of Timothy A. Chandler
110 West C Street Suite 1300
San Diego, California 92101
Telephone: (619) 645-5245
Facsimile:  (619) 334-7070

Attorneys for Billy E, Pittman

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY E. PITTMAN<br><br>    Plaintiff,<br><br>vs.<br><br>SCRIPPS HEALTH CORPORATION and<br>DOES 1-10<br><br>    Defendants | ) Case No. **'16CV1717 W    DHB**<br>)<br>)<br>)<br>) **COMPLAINT FOR DAMAGES**<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff Billy E. Pittman ("Plaintiff") alleges as follows:

## FACTUAL ALLEGATIONS

1. On September 28, 2015, Plaintiff wrote a letter to Victor Buzachero requesting to meet as soon as possible. Plaintiff informed Mr. Buzachero that it was a very urgent request because Plaintiff was being forced to work in a very hostile work environment. At that time, Plaintiff worked in Information Services in the Network Engineering department. Plaintiff's manager at the time was Dutch Wolff, who was, at all times mentioned in this complaint, employed by defendant. In the

**COMPLAINT FOR DAMAGES**

-1-

September 28, 2015 letter, Plaintiff explained the events of August 13, 2015. Plaintiff informed Mr. Buzachero that, on August 13, 2015, he was called into the manager's office about the network at Green Hospital going down. Mr. Wolff informed Plaintiff that the reason the network went down was because Plaintiff was negligent. Mr. Wolff claimed that, because Plaintiff did not update all of the ICX brocade stack switches and 2.12 closet, the Green Hospital network went down. At the August 13, 2015 meeting, Plaintiff thought he had completed all of the work on the closets, and told Mr. Wolff so. After the meeting, Plaintiff went back to the hospital to double check and discovered that some of the closets had not been updated. Plaintiff immediately sent an email to defendant stating that he discovered that he had not updated all of the closets, as he thought he had, and admitting that he made a mistake in reporting that all closets had been updated. Mr. Wolff told Plaintiff that, since Plaintiff had caused the network to go down, that result was grounds for termination. Plaintiff was placed on administrative leave pending an investigation from personnel. On August 25, 2016, Plaintiff was called back into the personnel office to be notified of the results of the investigation. On August 25, 2016, Alan Furman informed Plaintiff that he would be reinstated but would have to go through a performance improvement program. Mr. Wolff told Plaintiff "I wanted you fired but you are being reinstated." Mr. Wolff told Plaintiff that the reason he wanted to fire Plaintiff was because of the catastrophic network failure at Green Hospital.

2.      On or about August 26, 2016, Tim Stout and his team went out to Green Hospital to upgrade the switches that were missed. When the team reloaded the switch in the 2.12 IDF closet, the ICX switch crashed the network again. Tim Stout discovered that the root cause of the network failure was a G bit card and a bad switch, not Plaintiff's failure to upgrade some of the closets. Plaintiff was falsely

**COMPLAINT FOR DAMAGES**

-2-

accused by Mr. Wolff of negligently causing Green Hospital's network to go down, by failing to prevent software failure at Green Hospital. The alleged software failure did not cause Green Hospital's network to go down. Plaintiff also conducted his own investigation. He spoke to Brocade, the manufacturer of the software and hardware used at Green Hospital, about the software and hardware failure at Green Hospital. Brocade informed Plaintiff that factors other than software failure caused the switch to fail.  Brocade stated that, if the switch is operating under extreme heat, its components will suffer degradation which will degrade its function. In addition, Tim Stout sent an email noting other factors which contributed to the network failure at Green Hospital which had nothing to do with my actions and which had nothing to do with software failure. Plaintiff believes, and informed defendant, that hardware failure was 100 percent responsible for the catastrophic event at Green Hospital, because, even when the software was  reloaded the switch failed causing the network to go down. The only way to fix the problem was to replace the hardware. Once the Data Team replaced the G bit and switch, the problem was solved, so the root cause of the network failure was hardware. The stress was so severe that Plaintiff had to go on a leave of absence due to stress in September of 2015.

3.       Despite being cleared of causing Green Hospital's network to go down, by defendant's own team, Mr. Wolfe continued to harass and badmouth Plaintiff and to create a hostile work environment designed to intimidate and bully him into leaving his job, voluntarily or involuntarily. Mr. Wolff began to make statements and comments about Plaintiff that suggested that he was too old to do his job and that he should find another job. Mr. Wolff started assigning special projects of writing SOP's with no specific instructions. Once the projects were submitted to Mr. Wolff, he rejected them. Plaintiff felt that nothing he could do would be good

**COMPLAINT FOR DAMAGES**

enough. Plaintiff felt a constant threat hanging over his head while working at the Sorrento Valley location, while doing his performance improvement tasks.

4. Plaintiff has been the victim of disparate treatment by defendant, due to his age, who is over the age of 60, and his race, African-American. Younger employees and employees of the Caucasian race, have received write ups for not completing tasks, where Plaintiff received a suspension. Younger employees and employees of the Caucasian race make their own hours and keep their own hours without citations or repercussion, while Plaintiff is written up and cited for "excessive tardiness". Despite being forced to exonerate Plaintiff by the results of his investigation, Tim Stout has retaliated against Plaintiff. Two in half years ago, at a "Great Place to Work" meeting with Plaintiff's director and the Data team, Mr. Fritz encouraged Plaintiff and the others at the meeting to say what was on their minds. Plaintiff stated aloud that Tim Stout could not be trusted. Since that meeting, Tim Stout has retaliated against Plaintiff every chance he could get. Tim Stout called blacks "too stupid to do networking jobs." Tim Stout referred to blacks as "beaners" a derogatory term for blacks who are too stupid to do their jobs. Defendant's employees made discriminatory comments about Plaintiff's age. Mr. Furman, a white male employed as defendant's Human Resources Workforce Relations Advisor, who is in his 50's, told Plaintiff that "Scripps outgrew" Plaintiff. Defendant employees told Plaintiff he was "getting older" and that he had to work in a less demanding location. Defendant's employee asked Plaintiff during his review, how old he was and stated that Plaintiff was too old to do the job. Defendant employees told Plaintiff he needed to find another job because he was too old to work at Scripps and asked him when he would retire. On December 9, 2015, Mr. Wolff, a white male in his 30's, who was employed as a Network Engineering Manager, said to Plaintiff: "When are you going to retire?"

**COMPLAINT FOR DAMAGES**

Defendant's younger management employees also stated that other employees who were the same or similar age of Plaintiff were too old and needed to retire and that they were way too old to be working. Plaintiff was told by Defendant that he was getting too old to be working in hospitals.

5.  On February 28, 2015, March 23, 2015 Plaintiff had surgery on both of his hands which prevented him from working. After returning to work from his hand surgery, Plaintiff was assigned tasks that were too difficult given the state of his hands. This was in retaliation for filing an EEOC complaint and making other complaints about race and age discrimination against Defendant.

6.  Defendant fired Plaintiff from his job that he had worked since 2001.

7.  On March 21, 2016, Plaintiff filed an EEOC complaint against defendant, charging age discrimination and race discrimination.

8.  On April 5, 2016, the EEOC provided Plaintiff with a Notice of Right to Sue, a copy of which is attached hereto and which is incorporated by reference. Plaintiff demands a jury in this case.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper because this case involves federal questions. Venue is proper because all of the events described in this complaint occurred in San Diego County.

## PARTIES

10.     Plaintiff is an individual who resides and worked in San Diego County.

11.     Defendant is a corporation which operates in San Diego County and was the employer of Plaintiff at all times relevant in this complaint.

**COMPLAINT FOR DAMAGES**

-5-

12.  The true names and capacities of the Defendants, DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed, and believes, and thereon alleges, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiff as herein alleged.

13.  At all times herein mentioned, each of the Defendants were the agents, servants and employee of each of the remaining Defendants, and were, at all times herein mentioned, acting within the scope of said agency and employment.

## FIRST CAUSE OF ACTION
## FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. SECTIONS 2000e et. seq.

14.  Plaintiff incorporates by reference as if stated in full herein, the foregoing paragraphs 1-13.

15.  Plaintiff was retaliated against, and fired, because he reported, on more than one occasion, that his employer was violating state and federal laws, including, without limitation, discriminating against its employees on the basis of race and age.

**COMPLAINT FOR DAMAGES**

-6-

16.     Plaintiff was fired because the defendant wanted to get rid of a

whistleblower.

17.     Plaintiff was qualified to perform the job in question.

18.     Plaintiff had been doing the job for 15 years before his termination.

19.     Plaintiff  suffered adverse employment actions, including being fired.

## SECOND CAUSE OF ACTION
## FOR VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

20.      Plaintiff incorporates by reference as if stated in full herein, the foregoing

paragraphs 1-19.

21.     Plaintiff alleges that Defendants violated Title VII of the Civil Rights Act of

1964, 42 U.S.C. Sections 2000e et. seq., the Age Discrimination and Employment

Act of 1967, 29 U.S.C. Sections 621 et. seq,. and the American with Disabilities

Act of 1990, 42 U.S.C. Sections 126 et. seq., and that Defendant engaged in unfair

and deceptive business practices in violation of California Business and Professions

Code Section 17200.

## THIRD CAUSE OF ACTION
## FOR VIOLATION OF THE AMERICAN WITH DISABILITIES ACT OF 1990 42 U.S.C. Sections 126 et. seq.

22.     Plaintiff incorporates by reference as if stated in full herein, the foregoing

paragraphs 1-21.

**COMPLAINT FOR DAMAGES**

23.     Plaintiff applied for promotions but was denied promotions vis a vis younger candidates.

24.     Plaintiff applied for promotions which he was denied on the basis of race, age, and disability.

25.     Defendants violated the Americans with Disabilities laws, by refusing to accommodate his disability in the work place.

26.     Plaintiff was discriminated against based on race, in that he was terminated for actions far less serious than those of persons from other races.

27.     Plaintiff was the victim of disparate treatment, as compared to other employees.

## FOURTH CAUSE OF ACTION
## FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE
## SECTION 17200

28.     Plaintiff incorporates by reference as if stated in full herein, the foregoing paragraphs 1-27.

29.     Defendant engaged in a course of deceptive conduct which culminated in his termination.

30.     Defendant's penalizing whistleblowers by terminating them for the same conduct engaged in by other employees, who are not terminated, is an unfair and deceptive business practice.

**COMPLAINT FOR DAMAGES**

-8-

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgments against the Defendants, and each of them as follows:

1. Damages in the amount of $500,000.00.

2. Reinstatement on Plaintiff's job as Network Technician.

3. Punitive damages.

4. Plaintiff's attorney's fees.

5. Costs of suit and for such other and further relief as the court deems proper.

Respectfully Submitted,

DATED:  June 30, 2016          By:   /s/Timothy A. Chandler
                                     Timothy A. Chandler
                                     Attorney for Billy Pittman

                                     Law Offices of Timothy A. Chandler
                                     110 West C Street Suite 1300
                                     San Diego, CA. 92101
                                     Telephone: (619) 645-5245

**COMPLAINT FOR DAMAGES**